# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-1103V
(To be Published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                        *
KAYLA NICHOLS and JASON                 *       Special Master Corcoran
NICHOLS on behalf of their minor        *
child, N.N.,                            *
                                        *
                Petitioners,            *
                                        *       Filed: June 22, 2016
        v.                              *
                                        *       Attorney's Fees and Costs;
SECRETARY OF HEALTH                     *       Reasonable Basis;
AND HUMAN SERVICES,                     *       Dismissal Without Hearing;
                                        *       Reasonable Attorney Time.
                                        *
                Respondent.             *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Andrew D. Downing*, Van Cott & Talamante, PLLC, Phoenix, AZ, for Petitioner.

*Heather L. Pearlman*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART ATTORNEY'S FEES AND COSTS[1]

On November 13, 2014, Kayla and Jason Nichols filed a petition on behalf of their minor child, N.N., for compensation in the National Vaccine Injury Compensation Program (the "Vaccine Program"),[2] alleging that that the measles-mumps-rubella ("MMR") and other vaccines

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged and confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act.

N.N. received on June 3, 2009, and December 13, 2012, caused him to develop neurological issues. *See* Pet. at 1-2 (ECF No. 1). The claim was dismissed in February of this year, however, after Petitioners failed to meet several deadlines to file an expert report in support of their claim.

Petitioners have now requested an award of attorney's fees and costs in the combined amount of $21,561.50. App. for Attorney's Fees & Costs, dated Apr. 12, 2016 (ECF No. 30) ("Fees App."). Respondent opposes the request, arguing that the claim lacks reasonable basis, and also maintaining in the alternative that the sum requested is too high given the case's history. For the reasons stated below, I grant in part Petitioners' request, awarding them **$14,490.75** in fees and costs.

**Procedural History**

As noted above, the case was filed in November 2014. Pet. at 1. The petition expressly stated that N.N. had shown signs of developmental problems after certain childhood vaccinations received in June 2009, and was formally diagnosed with a "neurological condition" by February 2012 that included speech loss and coordination problems. Pet. at 1, 5 ¶15. However, he allegedly showed improvement until December 13, 2012, when he received a new round of MMR and varicella vaccines. *Id.* at 6 ¶¶ 17, 19. Almost immediately thereafter, he became feverish and displayed other physiologic reactions to the vaccinations, and then many of his neurologic issues returned. *Id.* at 6-8 ¶¶ 20-26. Petitioners thus alleged that the second MMR dose N.N. received in December 2012 exacerbated symptoms previously thought to have resolved. *Id.* at 8 ¶¶ 28-29.

The history of counsel's representation of the Nicholses bears on the present fees request. Four months prior to the petition's filing, Andrew D. Downing, Esq., and other attorneys and paralegals at the law firm of Van Cott & Talamante, PLLC, were contacted by the Petitioners and began to work on the case. *See generally* Billing Records, attached as Ex. A to Fee App. at 3-20.[3] Prior to the date of the petition's filing in November, Mr. Downing billed a little over three hours to the matter. *Id.* at 3. Justin Redman, however, an associate working at Mr. Downing's firm, billed 14 hours to the matter in the same timeframe (*id.* at 6-7), and appears to have performed more of the substance review of medical records and the claim's overall contours. At the same time, two paralegals – Bob Cain and Danielle Avery – collectively performed 8.5 hours of work. *Id.* at 11-13.

Overall, this does not reflect a significant effort on counsel's part to evaluate the case's strength. Moreover, since the onset of N.N.'s reaction to the MMR vaccine was alleged to have occurred around the time he received it in December 2012, counsel had over a year before the

---

[3] Petitioners did not separately file exhibits to the Fee Application as attachments. Counsel should do so in the future. *See* Vaccine ECF Rules, Section IV, Filing Requirements, Paragraph 10(a).

limitations period would run, and thus faced no pressure to file the petition quickly, before a full analysis of the claim could be made.

Not long after the case's initiation, the Petitioners filed a large set of medical records relevant to their claim (Notice, dated Nov. 26, 2014 (ECF No. 8)), and then a second set at the end of December, followed by a statement of completion. *See* Dec. 29, 2014, Statement of Completion (ECF No. 10). In the first several months of 2015, Petitioners filed additional documents identified by Respondent as necessary for evaluation of the case, and then Respondent filed her Rule 4(c) Report on May 28, 2015. ECF No. 17.

In her Rule 4(c) Report, Respondent questioned whether Petitioners could prevail on their claim, given the absence of record evidence of a change in N.N.'s post-December 2012 vaccination condition (along with no clear explanation of what that condition was). ECF No. 17 at 7-8. Rather, the record documented N.N.'s pre-vaccination neurologic problems. *Id.* at 8. She also noted that the record did not support the allegation that N.N.'s condition had improved prior to the December 2012 MMR vaccine; to the extent Petitioners relied on the statement of Dr. Baxi, one of N.N.'s treaters, to support the allegation, the statement was not corroborated by the actual medical record. *Id.* at 9. Because of the lack of record support, in a footnote Respondent raised the possibility that the claim lacked a reasonable basis, but she did not elaborate on the point. *Id.* at 7 n.3.

After review of the Rule 4(c) Report, I scheduled a status conference with the parties for June 2, 2015. At that time, I stated my initial view about problems with Petitioners' claim, echoing Respondent's factual points. *See* Scheduling Order, dated June 2, 2015 (ECF No. 18). But I expressed my understanding of the nature of their claim (that N.N. had somehow experienced a symptomatic relapse after receipt of the MMR vaccine in December 2012), and noted that Petitioners would need an expert to flesh out their theory, and should also contact Dr. Baxi to confirm Mrs. Nichols's recollection about statements he had made regarding N.N.'s condition. To that end, I set August 31, 2015, as the deadline for Petitioners to submit their expert report. ECF No. 18.

It was my expectation (as is always the case when setting deadlines for filing an expert report) that Petitioners and their counsel would make diligent use of the time thereafter (nearly three months in this instance) to prepare the ordered report. But the billing invoices reveal that this did not occur. From June 3 until August 31, 2015, Messrs. Downing and Redman collectively devoted .6 hours to this matter – with Mr. Downing's work performed all on the day the expert report was to have been filed. Ex. A to Fee App. (ECF No. 30 at 5 and 10).

Despite the above, Petitioners requested additional time through the end of September 2015 to submit their expert report and speak with Dr. Baxi (ECF No. 20), and I acceded to this request. Thereafter, however, Petitioners made two more extension requests, each time waiting until the

3

deadline to act, and ultimately requesting until November 30th to act. The billing records reveal slightly more diligence on Mr. Downing's part in the ensuing period to resolve questions relating to Dr. Baxi, although there is no evidence (at least from the filed billing invoices) of any attempt to locate an expert. ECF No. 30 at 5.

After Petitioners failed to file the oft-delayed expert report, in December 2015 I ordered Petitioners to file their expert report on or before January 4, 2016, and warned them that failure to respond accordingly would be interpreted as a failure to prosecute and would result in the dismissal of the case. ECF No. 23. Instead, Petitioners once again waited until the date of the deadline, this time filing a Motion to Amend the Schedule. ECF No. 24. In this Motion, Petitioners reported that Dr. Baxi had ignored their communication attempts, and maintained that they could not secure a causation expert without Dr. Baxi's clarification of the medical records. *Id.* at 1. The billing records, by contrast, reveal that by early November counsel had already spoken to Dr. Baxi, although it is possible the initial discussions with him were unhelpful in resolving the issues relating to the statements he was alleged to have made. ECF No. 30 at 5.

I denied the Motion to Amend, and instead ordered Petitioners to show cause on or before February 3, 2016, why their case should not be dismissed. ECF No. 25. Petitioners failed to do so (and instead present counsel moved to withdraw from the case entirely, asking me at the same time to give Petitioners even more time to determine how to proceed). *See* ECF No. 26 (Motion to Withdraw, dated Feb. 3, 2016). I therefore dismissed the case for failure to prosecute by decision dated February 5, 2016. *See* ECF No. 27.

**Fees Application**

The Nicholses filed the present fees application in April of this year. *See generally* Fees App. In it, they request an award of $14,217.50 in fees reflecting the work performed on the case by Mr. Downing (13.2 hours at a rate of $350 per hour), plus Mr. Redman (32.5 hours at the rate of $195 per hour). Ex. A to Fees App. They also ask that two paralegals (Mr. Cain and Ms. Avery) be reimbursed at the rate of $100 per hour for a combined total of 32.6 hours of work. *Id.* Finally, they request reimbursement of $1,001.45 in other costs, which include copying, filing costs, and medical records charges, among other things. ECF No. 30 at 25-38.

Respondent opposed the fees application on April 26, 2016. ECF No. 31 ("Opp."). She contested the action's reasonable basis,[4] noting that N.N.'s pre-vaccination neurologic problems were well-documented in the medical records. Opp. at 13-14. Otherwise, Respondent argued, there was no evidence in the medical record of a post-December 2012 worsening of his condition beyond

---

[4] Good faith and reasonable basis are prerequisites to obtaining a fees award in an unsuccessful case. 42 U.S.C. § 300aa–15(e)(1); *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). Respondent does not appear in this case to challenge Petitioners' good faith, and I do not otherwise find from my review of the totality of the circumstances that their good faith could be successfully challenged.

the claims of the Petitioners. *Id.* at 14. The Nicholses had ample time to investigate the claim, but had failed to do so.

Petitioners filed a lengthy reply in support of their fees application on May 5, 2016. ECF No. 32 ("Reply"). They maintained that it was reasonable for counsel to rely on Mrs. Nichols's recollection of Dr. Baxi's statements, which were also corroborated by other record evidence suggesting N.N. had in fact experienced an improvement in his neurologic condition before the December 2012 vaccinations. Reply at 7-8. They further recounted their efforts to speak with Dr. Baxi, providing details not previously disclosed about the difficulties they had in communicating with him, as well as setting forth representations he had made about N.N.'s condition that in fact were consistent with Mrs. Nichols's recollection. *Id.* at 10-12. Ultimately, however, Dr. Baxi refused to make a more official statement regarding the facts relevant to his treatment, despite the best efforts of Petitioners' counsel. *See* Ex. B to Reply (ECF No. 32 at 23-24). Given the above, Petitioners argued that their claim that the second receipt of MMR caused some kind of behavioral relapse in N.N. was objectively substantive.

On June 3, 2016, Petitioners filed a "Supplement" to the Fees Application. ECF No. 33. The Supplement asks for an additional award of $6,342.55 in attorney and paralegal fees (4.3 hours of Mr. Downing's time; 22.2 hours reflecting work performed by a different associate, Courtney Van Cott, but at the same hourly rate as Mr. Redman; and 1.6 hours of paralegal time) incurred in preparing the Reply. It also requests $348.55 in costs (mostly reflecting electronic legal research charges). Astoundingly, the total amount of attorney time devoted to preparing the Reply (almost 27 hours) exceeds the work performed on this matter before the filing of the Petition (17 hours). The matter is now ripe for resolution.

**ANALYSIS**

I.   **The Case Had Sufficient Reasonable Basis for a Fees Award**

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[5] *See, e.g., Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, *slip op.* at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate, through some evidentiary showing and in light of the totality of the circumstances, that his claim had a reasonable basis for being pursued. The nature

---

[5] Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

and extent of counsel's investigation into the claim's underpinnings, both before and after filing, is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Based on my review of the case record coupled with the history of counsel's representation of Petitioners as set forth in the billing records, I conclude that this matter had barely enough reasonable basis to be viable, up to the time Petitioners were unable to obtain an expert report supporting their claim and opted for dismissal. The general theory proposed by Petitioners – that N.N. experienced a "rechallenge" after the December 2012 vaccination – has been successfully articulated in the Program, albeit in other contexts. *Larive v. Sec'y of Health & Human Servs.*, No. 99–429V, 2004 WL 1212142 (Fed. Cl. Spec. Mstr. May 12, 2004) (hepatitis B vaccine caused a renal illness in a case involving positive rechallenge with a subsequent worsening after MMR vaccine and after an upper respiratory infection). It was not facially unreasonable for Petitioners to attempt to advance such a claim, even though to date no such claim has been successful in asserting an autism-like developmental injury.

To some extent, the parties' debate about the significance of Dr. Baxi's comments to the claim's viability are peripheral to the real issue in dispute. Petitioners have successfully established that they made efforts to contact him, and that he initially represented to them facts consistent with their case theory before refusing to participate further. But I find that reasonable basis would have (again – just barely) existed even if Dr. Baxi had been completely unavailable, since Petitioners have also pointed to record evidence (in their possession prior to the filing of the claim) that supports Mrs. Nichols's contention about N.N.'s improvement prior to his December 2012 vaccinations. *See, e.g.*, Reply at 3-4 (citations omitted). That the claim was weak, and unlikely to succeed, is not the same as saying it had no basis at all.[6]

---

[6] I do take note of the fact that in this case (unlike *Allicock*), counsel was not under any immediate time pressure to file, and therefore had ample time to investigate the claim. I also observe (and expect present counsel to note as well) that numerous recent decisions have cast significant doubt on the viability of claims alleging that vaccinations administered to a child were related to the child's subsequent regression. *See, e.g.*, *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2015 WL 7732603, at *4-5 (Fed. Cl. Spec. Mstr. Nov. 3, 2015) (petitioners failed to demonstrate that DTaP vaccine caused or significantly aggravated underlying mitochondrial disease resulting in ASD); *Lehner v. Sec'y of Health & Human Servs.*, No. 08-554V, 2015 WL 5443461, at *34-35 (Fed. Cl. Spec. Mstr. July 22, 2015) (petitioners failed to demonstrate that flu vaccine resulted in autoimmune encephalitis). Given the above, the ongoing filing of such claims by counsel with experience in the Program is highly dismaying. While I am awarding some fees in this case (mindful in part that many of the most relevant and well-reasoned decisions on the topic were published after this case's filing), future similar claims – especially where counsel has ample time to complete an investigation – will not likely receive the same favorable treatment.

**II.    Challenges to the Amounts Requested for Petitioners' Attorneys**

   A.    *Attorney Hourly Rates*

In prior relevant cases, I have awarded Mr. Downing $350 per hour after applying the law relevant to attorney hourly rate calculation in the Vaccine Program. *See Al-Uffi v. Sec'y of Health & Human Servs.*, No. 13-956V, 2015 WL 6181669, at *11 (Fed. Cl. Spec. Mstr. Sept. 30, 2015) (citing with approval *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015)). I have also awarded the associates working with him $195 per hour as consistent with prevailing views among the special masters as to the proper ranges for in-forum attorney rates. *Al-Uffi*, 2015 WL 6181669, at *3 n.5; *see also McCulloch*, 2015 WL 5634323, at *20-21. I shall therefore apply these same rates herein.

   B.    *Hours Expended by Petitioners' Attorneys*

I have previously discussed the legal standards relevant to evaluating whether attorney time devoted to a matter was reasonably spent. *Al-Uffi*, 2015 WL 6181669, at *11-12. Here, although I have found that the case possessed enough reasonable basis to entitle Petitioners to an award, I also find (having reviewed the billing records) that the majority of time devoted to the case was unreasonably spent.

My review of the billing record reveals little effort by counsel to gauge the case's strengths prior to filing. This was not a case where a looming limitations deadline forced counsel to act before initiation of the claim. Worse, the invoices show a generalized dilatoriness even after the case was filed. Thus, during the time counsel should have been following my Orders that he obtain an expert opinion to support the claim from a causation standpoint, he instead did almost nothing. Instead, counsel spent this time in an effort to reach and speak to the elusive Dr. Baxi on the very day the first such deadline to act expired, and then devoted little demonstrable energy thereafter to find him (while continuing to do nothing more to obtain an expert). The time devoted to preparing the Reply could have been more productively spent trying to locate an expert to offer a reliable opinion in support of Petitioners' claim.

It is within my discretion to determine whether the time billed to this case was reasonable regardless of Respondent's objections, and even where Respondent has not specified objectionable components of a fees request, such as a category of work deemed inefficient or unnecessary. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009). Here, although I have found that a complete denial of fees is not appropriate, and the magnitude of fees requested are relatively modest, I do not find that all, or even most, of the fees sought should be awarded. Certainly the case could have been more fully investigated before filing, and important witnesses like Dr. Baxi contacted earlier in time. I am particularly dismayed by counsel's failure to adhere

to my deadline orders, along with the fact that (as the records establish in stark relief) nothing was done to comply with them.

I therefore deem it appropriate to reduce by 50 percent all fees incurred in the case from the date of filing until the time counsel formally sought to withdraw, in order to account for counsel's failure to act diligently and thoroughly in addressing underlying problems with the claim that could have been identified sooner. After the filing of the Rule 4(c) Report, not only were the reasonable basis issues with the claim expressly evident, but counsel took <u>no</u> efforts to comply with my orders to obtain a causation expert, and instead devoted what little additional time was spent on the case to pursuing factual corroboration for Mrs. Nichols's claims.

It is true that fees and expenses incurred in litigating fees disputes are often reimbursed. In addition, Petitioners were forced to some extent to devote extra attention to the preparation of a reply brief given the nature of Respondent's opposition in this case. However, it is inconsistent with my overall determination that insufficient work was performed on the case while it was still viable to then turn around and award all fees spent on the fees award portion of the case.[7] I will thus also reduce these fees dispute costs by 50 percent; the time spent litigating a fees dispute should not constitute a third of the total award requested (as it does here), and in a case where reasonable basis presents such a close question.

Accordingly, I award attorney's fees as follows:

(a)    100 percent before filing (7/8/2014 – 11/13/2014):

      Mr. Downing: $350 x 3.2 hours = $1,120.00;

      Mr. Redman: $195 x 14 hours = $2,730.00;

(b)    50 percent from filing to dismissal (11/14/2014 – 2/5/2016):

      Mr. Downing: $350 x 10 hours x .5 = $1,750.00;

      Mr. Redman: $195 x 18.5 hours x .5 = $1,803.75;

---

[7] I also note that, at the present time, I have multiple fees requests before me involving the same counsel. All of these fees requests arise in cases dismissed within a year of filing – and where the costs of the "fees for fees" component of the action constitute a large percentage of the attorney's overall charges in the case. While counsel should be awarded fees and costs for litigating borderline claims that nevertheless possess reasonable basis, I am concerned about devoting unnecessary time and effort to resolving these matters, and therefore reasonably expect counsel in the future to look more closely at the cases accepted, and thereby avoid the need to spend the most energy in the matter on litigating the fees award.

  (c)  Fees litigation (reduced by 50 percent):

    Mr. Downing: 13.2 hours x $350 x .5 = $752.50;

    Ms. Van Cott: 22.2 hours x $195 x .5 = $2,164.50;

**Total Attorney's Fees Award : $10,320.75**

### III. Costs

  There are two categories of costs requested herein: paralegal costs and litigation-related costs. As to the former, Petitioners request reimbursement for the services of two paralegals at a rate of $100 per hour. This rate is consistent with my prior awards to Mr. Downing's firm. *Al-Uffi*, 2015 WL 6181669, at *3, 14 n.20. Respondent makes no objection to the proposed paralegal rates. I will therefore award the requested paralegal rates herein.

  With respect to paralegal time, Respondent offers no specific objections to the reasonableness of any particular time entries. Although I have reduced the amount of attorney time that I will award in this case, I will not also reduce paralegal time devoted to it. Records were filed promptly in the matter, and counsel made an appropriate use of paralegal time on matters not warranting attorney attention. And from my review of the billing records, it does not appear to me that paralegal time was wasted in this case. I will therefore award requested paralegal costs in their entirety.

  I reach the same conclusions with respect to the litigation costs requested herein, which include the expenses of document gathering, photocopying, and online legal research. The total sum requested, including costs incurred in litigating the fees dispute ($1,350.00), is reasonable for a case that lasted only one year. I have identified no particular cost categories that are objectionable, and Respondent has not otherwise specified any category of costs as improper.

**CONCLUSION**

Based on all of the above, the following chart sets forth the total calculation of Petitioners' fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Downing's Fees | $6,125.00 | $2,502.50 | $3,622.50 |
| Mr. Redman's Fees | $6,337.50 | $1,803.75 | $4,533.75 |
| Ms. Van Cott's Fees | $4,329.00 | $2,164.50 | $2,164.50 |
| Paralegal Costs | $2,820.00 | None | $2,820.00 |
| Litigation Costs | $1,350.00 | None | $1,350.00 |

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs, awarding **$14,490.75** in fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.